**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | CASE NOS.: 1:13-CR-12 (WLS) |
| STEWART PARNELL, MICHAEL | : | 1:13-CR-7 (WLS) |
| PARNELL, SAMUEL LIGHTSEY, and | : | |
| DANIEL KILGORE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Defendants Stewart Parnell, Michael Parnell, Samuel Lightsey, and Daniel Kilgore have each been convicted and sentenced in connection with charges related to the Peanut Corporation of America's (PCA) shipment of adulterated and misbranded food in interstate commerce. At their sentencing hearings, the Court, in its discretion under 18 U.S.C. § 3664(d)(5), deferred issuing an order as to restitution and ordered that the Government provide additional information to the United States Probation Office so that the Probation Office could make a more precise recommendation as to the amount of victims' losses. (Docs. 484, 515; 1:13-cr-7, Doc. 34.)[1] On January 26, 2016, the Court held a restitution hearing. The Court herein makes findings as to what amount, if any, of restitution the Defendants should be ordered to pay.

## PROCEDURAL and FACTUAL BACKGROUND

### I.   Defendants' Offenses of Conviction

Stewart Parnell was indicted for mail fraud and wire fraud, 18 U.S.C. §§ 1341, 1343 and conspiracy to commit those crimes under 18 U.S.C. § 1349; introduction of adulterated and misbranded food into interstate commerce with intent to defraud or mislead under 21 U.S.C. §§ 331(a) and 333(a)(2) and 18 U.S.C. § 2, and conspiracy to commit those crimes under 18 U.S.C. § 371; and obstruction of justice under 18 U.S.C. §§ 1505 and 2.  Stewart Par-

---

[1] Because the majority of the Court records cited in this Order were filed in Case Number 1:13-cr-12, the Court will not specify the case number when citing documents on the docket in that case. Rather, when the Court cites a document filed in 1:13-cr-7, the Court will so specify.

nell was convicted by a jury on all counts alleged in the Indictment except for Count 60, a wire fraud count. (*See* Doc. 285.) Michael Parnell was indicted for mail fraud and wire fraud, 18 U.S.C. §§ 1341, 1343 and conspiracy to commit those crimes under 18 U.S.C. § 1349; introduction of adulterated and misbranded food into interstate commerce with intent to defraud or mislead under 21 U.S.C. §§ 331(a) and 333(a)(2) and 18 U.S.C. § 2, and conspiracy to commit those crimes under 18 U.S.C. § 371.  Michael Parnell was convicted by a jury on all counts with which he was charged except for eight counts of introduction of adulterated food into interstate commerce with intent to defraud or mislead.  (*See* Doc. *Id.*)

    Samuel Lightsey pleaded guilty to Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343, 1349, Conspiracy to Introduce Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(a) and 333(a)(2), Introduction of Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), Interstate Shipments Fraud in violation of 18 U.S.C. § 1341, Wire Fraud in violation of 18 U.S.C. § 1343, and Obstruction of Justice in violation of 18 U.S.C. §§ 1505 and 2. Lightsey's plea agreement did not contain any reference to restitution. (*See* Doc. 153.)

    Daniel Kilgore pleaded guilty to Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349, Conspiracy to Introduce Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(a) and 333(a)(2), Introduction of Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), Introduction of Misbranded Foods into Interstate Commerce with the Intent to Defraud in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), Interstate Shipments Fraud in violation of 18 U.S.C. § 1341, and Wire Fraud in violation of 18 U.S.C. § 1343. Kilgore's plea agreement did not contain any reference to restitution. (*See* 1:13-cr-7, Doc. 6.)

## II.     January 26, 2016 Restitution Hearing

    On January 26, 2016, the Court held a restitution hearing. Defendants Stewart and Michael Parnell were not present at the hearing, and the Court found that Defendants Stewart and Michael Parnell effectively waived their right to appear at the hearing by filing sworn affidavits stating their desire not to appear. Defendants Samuel Lightsey and Daniel Kilgore were present at the hearing. Attorneys for all four Defendants were present at the hearing.

At the conclusion of the restitution hearing, the Court ordered the Parties to file any supplemental briefings or evidence within fourteen days. The Parties did not file additional briefing or evidence. (*See* Docket.)

## DISCUSSION

I.      **Whether Mandatory Restitution Is Triggered by the Defendants' Offenses of Conviction**

Defendants Stewart and Michael Parnell were sentenced on September 21, 2015. Defendants Samuel Lightsey and Daniel Kilgore were sentenced on October 1, 2015. At the sentencing hearings, the Court determined that each Defendant was required to pay restitution under the Mandatory Victims' Restitution Act. In pronouncing the Defendants' sentences, the Court deferred its determination of restitution amounts because it was not yet satisfied that it could make a reasonable calculation of the total restitution amounts based on the information it had been furnished by the United States Probation Office and the Government's counsel. The Court ordered the Government to provide additional restitution information to the United States Probation Office and directed the United States Probation Office to provide a report including "total restitution amounts for all known victims, including corporate and third-party (such as insurance providers) victims." (Docs. 484, 515, 596; 1:13-cr-7, Docs. 34, 39.) The Court concluded that because it made clear at the time of sentencing that restitution was mandatory as to each of the above-named Defendants and that the only outstanding issue to be determined was the *amount* of restitution, the Court retained authority to order restitution even though the ninety-day deadline set forth in 18 U.S.C. § 3664(d)(5) had lapsed. (Doc. 600 at 1-2; 1:13-cr-7, Doc. 40 at 1-2 (citing *Dolan v. United States*, 560 U.S. 605, 607-08 (2010)).)

The Mandatory Victims Restitution Act ("MVRA") applies where (1) a defendant is convicted of (or pleads guilty to) an offense against property under Title 18, including any offense committed by fraud or deceit, *and* (2) an identifiable victim or victims who have suffered a physical injury or pecuniary loss. 18 U.S.C. § 3663A(c)(1).[2]

---

[2] The Court also notes that the MVRA is triggered by convictions under 18 U.S.C. §§ 1365 and 670 or convictions for crimes of violence as defined in 18 U.S.C. § 16, but the Defendants' convictions in the above-styled cases do not fall within those categories.

The Court notes that Stewart Parnell and Samuel Lightsey's convictions for Obstruction of Justice are not crimes against property and do not otherwise trigger the MVRA; however, the Court finds that some of the Defendants' crimes –mail fraud, wire fraud, and interstate shipments fraud and conspiracy to commit those offenses –are crimes against property and offenses committed by fraud. Committing a crime under Title 18, conspiring under 18 U.S.C. § 1349 to commit a crime under Title 18, or conspiring under 18 U.S.C. § 371 to commit a crime *not* under Title 18 are all offenses under Title 18 for mandatory restitution purposes. *See United States v. Quarrell*, 310 F.3d 644, 677 (10th Cir. 2002); *United States v. Brennan*, 526 F.Supp. 2d 378, 383 (E.D. NY 2008). Here, all of the Defendants' crimes against property, except for the Introduction of Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead under 21 U.S.C. §§ 331(a) and 333(a)(2), fall within one of those three categories. The Defendants' crimes, except for Introduction of Adulterated Food into Interstate Commerce with Intent to Defraud or Mislead and Obstruction of Justice, are thus crimes that can trigger the MVRA under 18 U.S.C. § 3663A(c)(1)(A)(ii). *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) (noting that conspiracy to commit wire fraud is an offense against property for MVRA purposes); *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir. 2010) (affirming a district court's application of the MVRA where a defendant was convicted of mail fraud).

Further, the Defendants' MVRA-triggering crimes involved identifiable victims who suffered physical injury and pecuniary loss. Those victims include the individuals who were sickened by contaminated food products and their estates, the food production companies that suffered financial harm as a result of their receiving salmonella-laced peanut products from PCA, and the insurance companies that paid claims resulting from the Defendants' crimes. Because the Defendants' committed qualifying crimes with identifiable victims who suffered physical injury or pecuniary loss, the Court finds that the Defendants are required to pay restitution under the MVRA unless an exception applies under § 3663A(c)(3).[3]

The MVRA's mandatory restitution provisions do not apply to offenses against property, including any offenses committed by fraud or deceit, if the district court finds, from the

---

[3] The Court notes that 18 U.S.C. § 3663A(c)(3)'s exceptions to mandatory restitution do not apply to crimes of violence, but here the Court has found that the Defendants' qualifying crimes were not ones of violence but instead crimes against property, committed by fraud, as described in § 3663A(c)(1)(A)(ii).

facts on the record that "the number of identifiable victims is so large as to make restitution impracticable" or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(A)-(B). These exceptions notably do not apply to offenses "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." § 3663A(c)(1)(B), (3). In the following review of the evidence in the record, the Court will determine whether one of the exceptions to mandatory restitution applies.

## II.    Evidence in the Record of Victims' Losses

When restitution is disputed, the Government is required to prove it by a preponderance of the evidence. *See United States v. Hasson*, 333 F.3d 1264, 1275 (11th Cir. 2003) (citing 18 U.S.C. § 3664(e)). At the request of the United States Probation Office (USPO), the Government is required to consult with the victims and detail any losses subject to restitution; such detail is to be disclosed to the defendants prior to sentencing. *See* 18 U.S.C. § 3664(d)(1). "After reviewing the report of the probation officer, the court may require additional documentation" or evidence, which the Court attempted to do here in ordering the Government to provide additional information to the USPO and in holding a restitution hearing. § 3664(d)(4).

Because "it is sometimes impossible to determine an exact restitution amount," "the restitution amount may be approximated." *United States v. Furell*, 209 F.3d 1286, 1291-92 (11th Cir. 2000). However, such reasonable estimates must be based on facts *in the record. United States v.Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014). A restitution amount "cannot be woven solely from the gossamer strands of speculation and surmise." *United States v. Innarellii*, 524 F.3d 286, 294 (1st Cir. 2008) (citations omitted). A number of Circuit Courts have reversed or remanded restitution orders where they have found the Government failed to prove victims' losses adequately. *E.g., United States v. Archer*, 671 F.3d 149 (2d Cir. 2011); *United States v. Reifler*, 446 F.3d 65, 138-39 (2d Cir 2006); *United States v. Cornier-Ortiz*, 361 F.3d 29 (1st Cir. 2004); *United States v. Doe*, 374 F.3d 851 (9th Cir. 2004); *United States v. Felman*, 338 F.3d 212, 221 (3d Cir. 2003).

Under the MVRA a sentencing court must impose restitution to fully compensate a "victim" for the physical injury or pecuniary loss suffered.  18 U.S.C. § 3663A(c)(1)(B).  The MVRA defines "victim" as follows:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

§ 3663A(a)(2). In order for a court to order a defendant to pay restitution to a victim, the court must find that the defendant was both the "but for" and "proximate" cause of the victim's injury. *U.S. v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010). Restitution need not arise solely from offense conduct, i.e. specific overt acts committed in furtherance of the offense of conviction, but "a criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *United States v. Valladares*, 544 F.3d 1257, 1269-70 (11th Cir. 2008) (quoting *United States v. Dickerson*, 370 F.3d 1330, 1341 (11th Cir. 2004)) (internal citations omitted).  In other words, "[a] restitution award 'must be based on the amount of loss *actually* caused by the defendant's conduct.'" *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) (quoting *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001)) (emphasis in original); *see also United States v. Singletary*, 649 F.3d 1212, 1221 (11th Cir. 2011) ("The Government had the burden of proving, with respect to each of the mortgages for which it sought restitution, that the mortgage was the product of a fraudulent misrepresentation.").

The Court notes that the loss amounts and numbers of victims listed in the Defendants' presentence investigation reports and adopted by the Court at sentencing were determined under the United States Sentencing Guidelines and were calculated using criteria different from that which applies in the restitution context. For example, in determining loss amount and number of victims for sentencing guideline purposes, the Court may take into account relevant conduct and intended loss, but in calculating restitution, the Court is limited to considering the direct losses actually resulting from the Defendants' crimes of conviction. *Hughey v. United States*, 495 U.S. 411, 420 (1990) ("[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order."); *Huff*, 609

F.3d 1240 at 1247; *see United States v. Catherine*, 55 F.3d 1462, 1465 (9th Cir. 1995) (noting different methods of calculating loss under U.S.S.G. § 2F1.1 and 18 U.S.C. § 3663).

### A. Stewart and Michael Parnell

*1. Individual Losses*

The evidence of individual victims' losses was summarized primarily in the trial testimony of Dr. Ian Williams, Chief of the Outbreak Response and Prevention Branch at the Centers for Disease Control ("CDC"), and the testimony of Alan Maxwell at the July 1 and 2, 2015 evidentiary hearing on relevant conduct. This evidence was presented only during the trial of Stewart and Michael Parnell and the pre-sentencing evidentiary hearing held on July 1 and 2, 2015. Neither Samuel Lightsey and Daniel Kilgore nor their counsel were present for the Parnells' trial or the evidentiary hearing.

Dr. Ian Williams testified at trial that the CDC found that "714 ill people reported to PulseNet from 46 states and included 166 persons who reported being hospitalized." (*See* Doc. 435 at 5.) To be included in that 714-person figure reported by the CDC, a person would have to have a stool sample taken by a healthcare provider, and the strain of salmonella found in that person's stool would have had to match the strain of salmonella linked to the PCA salmonella outbreak of 2007 using pulsed field gel electrophoresis. Williams also testified that the CDC estimated that there were thirty unreported cases of salmonella linked to the PCA outbreak for every one reported case due to the likelihood that individuals infected with salmonella would not go through the entire process of identifying the strain of salmonella explained above. According to Williams, when the recall of PCA products was complete, new cases of salmonella illness with patients presenting the particular strain of salmonella associated with the PCA outbreak ceased.

Alan Maxwell was the claims administrator in PCA's bankruptcy proceedings. Maxwell was appointed by the United States Bankruptcy Court for the Western District of Virginia to serve as claims administrator for personal injury claims against PCA arising from the salmonella outbreak at the center of the above-captioned cases. Maxwell was responsible for disbursing $12 million from a Hartford Insurance policy purchased by PCA. (Doc. 425-8 at 2.) To be eligible for compensation, a person had to submit proof that they had been infected with a particular strain of salmonella associated with the PCA outbreak after consuming food produced by PCA and had exhibited symptoms consistent with a salmonella infection.

(*Id.* at 3.) Maxwell found that the total value of claims was approximately $15 million and therefore reduced payouts to claimants to 79.00166% of the value assigned to their claims. (*Id.* at 4.) Wrongful death claims and claims submitted on behalf of minors were evaluated under the law of the state where the tort claim arose.  (*Id.* at 7-8.)  "Maxwell began with a verification of the medical expenses, days of total illness, hospital stays, Emergency Room visits, Doctor's Office visits, and incurred lost wages" and "created classes based on severity of the infection—which [was] determined by the course of treatment and the length of the illness." (*Id.* at 10.)  At that stage, Maxwell assigned a rough valuation category after consulting a database of salmonella infection settlements from earlier outbreaks and considering "additional criteria such as the permanency of any effects, the age of the afflicted individual, and all incurred medical expenses."  (*Id.*)  Maxwell then adjusted claim valuations based chiefly on the strength of the causation evidence.  (*Id.*)  After Maxwell reached a rough valuation for each claim, he approached counsel for the tort claimants for collaboration.  (*Id.* at 11.)  Following discussion with the other attorneys, Maxwell finalized the claim amounts and those amounts were approved by the Bankruptcy Court.  (*Id.*)

At the January 26, 2016 restitution hearing, Government counsel explained that the United States Probation Office's method in recommending the individual loss totals was to take the claim amount calculated by Maxwell in the bankruptcy claims process and subtract the payments the individual victims actually received through that process. Also at the restitution hearing, counsel for the Government informed the Court that only victims who participated in the PCA bankruptcy claims process had sufficiently established entitlement to restitution and that the victims who submitted victim impact statements but did not participate in the PCA bankruptcy claims process had not sufficiently established their entitlement to restitution.

At the restitution hearing, the Defendants argued that the claims as calculated by Maxwell were tort claims and likely included damages which would not be within the scope of restitution. Indeed, while restitution is in some ways a substitute for civil damages, it is unlike civil tort damages because it is limited to direct losses rather than consequential damages. *United States v. Caputo*, 517 F.3d 935, 943 (7th Cir. 2008). The Seventh Circuit has held, "A civil judgment award by itself, however, is insufficient to support an order of restitution because some damages and costs recoverable in a civil action, such as treble damages, con-

sequential damages and attorneys' fees spent in pursuing litigation against the wrongdoer, do not qualify as 'losses' under the MVRA." *United States v. Havens,* 424 F.3d 535 (7th Cir. 2005). In response to Defendants' argument, the Government conceded that the individual victims' restitution figures were based on Maxwell's calculations because that was the "most straight-forward method" but did not deny that those calculations likely took into account damages not recoverable as restitution. The Court cannot base a restitution order on Maxwell's findings without knowing whether Maxwell's calculations included tort damages not recoverable as restitution. The Court finds that because Maxwell's claim evaluations were based on state tort laws, his calculations very likely factored in indirect or consequential losses that are not recoverable as restitution in a criminal proceeding.

Furthermore, in United States Magistrate Judge Michael Urbanski's Report and Recommendation regarding the PCA claims settlements, Judge Urbanksi noted, "[T]his entire settlement was predicated on the ability of the parties to have a secondary recourse with the manufacturers . . . ." In order words, the entire process of calculating the payments to be made from the $12 million insurance policy was conducted in view of the fact that most claimants would be able to seek and receive compensation from the manufacturers –PCA's customers –in addition to PCA. But in calculating restitution, this Court is neither constrained by a $12 million limit or the fact that the victims may recover from other sources; the Court is required to order restitution "in the full amount of the victims' losses." 18 U.S.C. § 3664(f)(1)(A), (B).

For those reasons, the Court cannot rely on Maxwell's calculations as the sole basis for determining the amount of restitution owed to individual victims. The Court therefore finds that the evidence presented by the Government provides an insufficient basis for determining the restitution amounts Stewart and Michael Parnell should be ordered to pay to the individual victims of their crimes of conviction.

### 2. Corporate Losses

The evidence of corporate losses in this case was summarized primarily by FBI Special Agent Cynthia Allard who testified at the July 1 and 2, 2015 evidentiary hearing on relevant conduct, at which Samuel Lightsey and Daniel Kilgore were not present. At that hearing, Allard presented a summary chart of the financial losses sustained by corporate victims. Though Allard identified hundreds of potential corporate victims, the Government chose to

seek corporate records from only fifty of those companies. The fifty companies identified by the Government were the companies estimated to have purchased the most PCA product during 2008. (Doc. 435 at 37.) The Government tendered into evidence the business records provided by thirty-one companies who were responsive to the Government's subpoena. The summary submissions option afforded to the corporate victims merely allowed the victims to assist the Government in compiling the information. The corporate victims all remained under the threat of perjury and were not relieved of their duty to be prepared to "testify as to the accuracy and completeness of [their] statement[s of loss]."  (See *Id.*)  Further, Allard testified that she contacted some of the corporate victims to verify or clarify information or calculations contained in the summary reports.

Additionally, the presentence investigation reports for each of the above-named Defendants, adopted by the Court at the sentencing hearings, read as follows:

> Investigators identified 31 of PCA's customers and obtained loss amounts from those companies that were suffered as a result of PCA's fraudulent activity and shipment of tainted products. Although PCA had approximately 200 companies to which it sold food products, the investigation covered only these 31. The loss amounts were determined by adding the cost of the recall, which included shipping, the amount of ingredients added to the food products other than the cost of the PCA food products, the money paid to PCA for their products, the manufacturing costs to make the final product, and law suits from individuals who got sick or died, due to PCA shipping products containing salmonella.

(1:12-cr-12, Docs. 464, 465, 497; 1:13-cr-7, Doc. 30 at 10.) The Government's Exhibit 8, introduced during the July 1 and 2, 2015 evidentiary hearing, reflects the losses of those corporations who responded to the Government's request for records.

The Court finds that corporate loss calculations involve some of the same problems as the individual loss calculations because they include "law suits from individuals who got sick or died," thus potentially including damages not within the scope of restitution. For example, King Nut, one of PCA's customers, submitted records of the insurance claims its insurer Grange Insurance paid to individuals who were sickened by contaminated PCA products used in King Nut products. (*See* Doc. 435 "Exhibit 8".) King Nut or its insurer reportedly paid $1,452,415.80 in "lawsuit losses," presumably to those personal injury claimants. (*Id.*) However, as with the individual victims, the Court cannot decipher from the Govern-

ment's evidence how much, if any, of those payments were for direct losses caused by the Defendants' crimes of conviction.

The Court therefore finds that the evidence presented by the Government provides an insufficient basis for determining the restitution amounts Stewart and Michael Parnell should be ordered to pay to the corporate victims of their crimes of conviction.

### 3. Third-Party, i.e. Insurance Company, Losses

A number of insurance companies paid claims for individual and corporate victims' losses resulting from the Defendants' crimes of conviction and could therefore be considered victims under the Mandatory Victims Restitution Act. 18 U.S.C. §§ 3663A(a)(2), 3664(j)(1). The Government stated in its memorandum on sentencing issues that it would "submit to the Court a list of third parties that are entitled to restitution, along with the amounts to which they are entitled." (Doc. 435 at 38.) The Government did not do so. Hartford Insurance is the only insurance company whose losses have been reported by the Government. Hartford Insurance is listed as having lost a total of $12,750,000 in the chart at the beginning of Exhibit 8. However, again, the Court is hindered by the issue of how much Hartford Insurance, as well as other insurance companies whose loss amounts are completely unknown by the Court at this time, lost in payments for losses that were not "direct losses" for restitution purposes. Hartford Insurance paid to settle the individual victims' claims as calculated by Alan Maxwell; therefore, the same uncertainty the Court has identified as to the individual victims creates a problem for calculating Hartford Insurance's losses for restitution purposes. As to the other insurance companies who suffered losses, the Government simply has not proffered loss totals. The Court therefore finds that the evidence presented by the Government provides an insufficient basis for determining the restitution amounts Stewart and Michael Parnell should be ordered to pay to the third-party victims of their crimes of conviction.

### B. Samuel Lightsey and Daniel Kilgore

As the Court has already noted, the bulk of the evidence the Government cited in support of its restitution estimates was never introduced in proceedings at which Defendants Samuel Lightsey and Daniel Kilgore were present. Only the spreadsheets with totals of the individual victims' losses were introduced, over objection, during the January 26, 2016 restitution hearing. (Docs. 617-1, 617-2, 617-3.) However, none of the underlying evidence sup-

porting those totals was introduced. No evidence of the corporate losses was introduced during the restitution hearing, though the Government made reference to "Exhibit 8," which contains evidence of PCA's customers' losses and was introduced during the July 1 and 2, 2015 evidentiary hearing at which Kilgore and Lightsey were not present. (*See* Doc. 425 ("Exhibit 8 – Binder (PCA Customer Loss Records) on file in Clerk's Office").)

Lightsey and Kilgore never had the opportunity to cross-examine the Government's witnesses Alan Maxwell, Ian Williams, and Cynthia Allard. Lightsey and Kilgore never had the opportunity to object to the admission of the evidence of corporate losses contained in the Government's Exhibit 8 introduced during the July 1 and 2 evidentiary hearings. Likewise, Lightsey and Kilgore did not participate in any way in PCA's bankruptcy proceedings and would have had no opportunity to contest the damages owed to each victim as calculated by Alan Maxwell. Furthermore, the facts to which Lightsey and Kilgore stipulated in their guilty pleas do not provide a basis for the Court to estimate restitution amounts for any of the victims of the crimes to which Lightsey and Kilgore pleaded guilty. (Docs. 1, 153; 1:13-cr-7, Docs. 1, 6.)

Whether or not the facts in the record are sufficient to provide a basis for a reasonable estimate of the restitution amounts Stewart and Michael Parnell should be ordered to pay, the Court cannot base such an estimate on facts that are simply not in the record as to Samuel Lightsey and Daniel Kilgore. Defendants are not entitled to a full-blown evidentiary hearing as to restitution, and Lightsey and Kilgore were given notice of the evidence the Government would base its restitution calculations on and an opportunity to object. *Cf. United States v. Rochester*, 898 F.2d 971, 981-82 (5th Cir. 1990) (holding that a district court did not err in ordering restitution without first conducting an evidentiary hearing). However, the Court must ultimately base its restitution findings on the preponderance of the *evidence*, and the fact remains that the only *evidence* introduced as to Lightsey and Kilgore are summary charts of the individual victims' losses as calculated by Alan Maxwell during the PCA bankruptcy proceedings. 18 U.S.C. § 3664(e).  As to Defendants Kilgore and Lightsey, the Court finds that the evidence presented by the Government provides an insufficient basis for a fair and reasonable determination of the restitution amounts and of the identities of the victims who are entitled to restitution.

III.    **Whether an Exception to the MVRA Applies**

The Court finds that the Government's proof of the individual, corporate, and third-party victims' losses caused by Stewart Parnell, Michael Parnell, Samuel Lightsey, and Daniel Kilgore's crimes is simply insufficient to support restitution orders by a preponderance of the evidence. After allowing the Government additional time to provide more information to USPO, conducting a hearing on restitution, and reviewing the record, the Court finds that the exception at 18 U.S.C. § 3663A(c)(3)(B) applies because determining complex issues of fact related to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. This is especially true where there are so many victims who remain unidentified.

In so finding, the Court does not intend to minimize the victims' injuries or the seriousness of the Defendants' crimes. However, the Court must hold the Government to its burden of not only seeking criminal justice but protecting the rights of victims of crime, particularly where they are entitled to mandatory restitution. The Court acknowledges that 18 U.S.C. § 3664 places some burden on the USPO in collecting and providing restitution information to the Court, but neither the USPO nor the victims are parties to these proceedings. Under the MVRA, the buck ultimately stops with the Government. The Government has tacitly indicated through its refusal to provide additional information substantiating victims' losses, to provide clear and accurate calculations of the total amount of money owed to *each* victim, to introduce (or re-introduce) *evidence* underlying its summary charts so that Kilgore and Lightsey may have an opportunity to examine and object to such evidence, or to further brief the issue of restitution when given the opportunity to do so that it either lacks the will or ability to diligently pursue restitution further.

The Court is not herein "punting" the issue of restitution to another venue or into oblivion because it is too daunted by the complexity of determining the losses caused by each Defendant to each identifiable victim. *Cf. United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006) ("[T]he district court abused its discretion by relying on the perceived complexity of the restitution determination and the availability of a more suitable forum to decline to order restitution for future lost income."). Nor is the Court simply allowing the

Government to forfeit restitution on behalf of the victims. Rather, the Court will not prolong these proceedings, at the expense of the American people and the Defendants, to revisit the PCA bankruptcy proceedings or conduct mini-trials as to the eligibility of the as-yet unidentified victims and the total losses of the identified victims. The legislative history of the MVRA supports such a conclusion:

> It is the committee's intent that courts order full restitution to identifiable victims of covered offenses, while guaranteeing that the sentencing phase[s] of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings . . . In all cases it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution

S. Rep. No. 104-179, U.S.C.C.A.N. 924, 932 (Dec. 6, 1995).[4]

Though the Court is not to take Defendants' financial abilities into account in awarding restitution, the Court cannot ignore the fact that to require further restitution determination proceedings would ultimately be for naught or close-to-naught given the length of the Defendants' sentences and their earning capacities if and when they are released from prison, which would impact their payment schedules. § 3664(f)(1)(A). The Court is also not to take into account any civil recovery a victim may have received in fashioning a restitution award, but the Court again cannot ignore the availability of civil processes for the Defendants' victims, of which many victims took advantage, to seek damages. § 3664(f)(1)(B). The Court finds that the MVRA's complexity exception exists for circumstances such as these where a restitution determination would unduly prolong what has already been a lengthy and costly – both financially and emotionally –matter for all Parties, victims, and the Court. Further, the Court is not convinced that additional proceedings, particularly in light of the Government's lack of vigor in pursuing restitution, would actually produce the evidence necessary for a proper restitution determination.

For those reasons, the Court finds that determining complex issues of fact related to the cause or amount of the victims' losses would unduly complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. 18 U.S.C. § 3663A(c)(3)(B). Accordingly, the Court

---

[4] Additionally, the Court finds it patently unfair to default in favor of a handful of identified victims through some mathematical machination.

finds that 18 U.S.C. 3663A's mandatory restitution requirement does not apply in these circumstances as delineated by the Court.

## **CONCLUSION**

Having exercised its discretion to determine the amount of restitution, if any, to be ordered following sentencing and entry of judgment, the Court now finds that 18 U.S.C. § 3663A's mandatory restitution requirement does not apply because of the complex issues of fact related to identifying victims and calculating their losses. The Defendants shall pay no restitution. The Court **DIRECTS** the Clerk of Court to **AMEND** the judgments as to Defendants Stewart Parnell, Michael Parnell, Samuel Lightsey, and Daniel Kilgore to so reflect.

**SO ORDERED**, this 6th day of April, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**